UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) No. 6:11-CR-16-GFVT-HAI-4 |
| v. | ) |
| | ) RECOMMENDED DISPOSITION |
| SAMUEL KEITH MILLER, | ) |
| Defendant. | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

The Court, on referral (D.E. 172), considers reported violations of supervised release conditions by Defendant Samuel Keith Miller. District Judge Van Tatenhove entered a judgment against Defendant on September 9, 2011, for aiding and abetting his co-defendants (and vice versa) to willfully and knowingly steal and purloin various property belonging to the United States Department of Agriculture Forest Service, the total value of which exceeded $1,000.00. D.E. 100. The Judgment included 12 months of imprisonment and a three-year term of supervised release to follow. *Id.* at 2–4. Defendant's term of supervised release began on January 19, 2012.

On September 18, 2013, the United States Probation Office ("USPO") issued a Supervised Release Violation report ("the Report") charging Defendant with three violations, and secured a warrant from District Judge Van Tatenhove on September 23, 2013. The Report alleges that Defendant did not comply with the condition of his release that states, "The defendant shall not commit another federal, state, or local crime." It also alleges that Defendant violated Standard Condition # 11: "The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer." Finally, the

Report alleges that Defendant violated Standard Condition # 2: "The defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month."

Specifically, the Report states that, on July 17, 2013, Defendant was charged in Whitley County District Court with Operating a Motor Vehicle Under the Influence of Alcohol/Drugs, Aggravated Offense, in violation of KRS § 189A.010(5)(A) after he was involved in a motorcycle accident. Corbin Police officers who arrived at the scene smelled alcohol on Defendant, and Defendant admitted to drinking prior to the accident. The Report also states that when USP Officer Greiwe made contact with Defendant at his home on July 22, 2013, Defendant informed Officer Greiwe of the accident, but failed to disclose the above-mentioned criminal charge. In addition, the Report states that Defendant failed to provide monthly supervision reports for May, June, July, and August of 2013. Finally, the Report states that Defendant's brother-in-law, who resides at the address listed for Defendant, was given a card by Officer Greiwe on September 6, 2013 to give to Defendant instructing Defendant to contact Officer Greiwe immediately. This was followed by two voicemails left for Defendant by Officer Greiwe instructing Defendant to contact him immediately. On September 12, 2013, Officer Greiwe contacted Defendant's brother-in-law and was informed that Defendant's whereabouts were unknown. As of September 17, 2013, the date immediately prior to the issuance of the Report, Defendant had not contacted the USPO.

The Court conducted an initial appearance pursuant to Rule 32.1 on October 10, 2013, and set a final hearing following Defendant's knowing, voluntary, and intelligent waiver of his right to a preliminary hearing. D.E. 170. At that time, the United States made an oral motion for

interim detention, to which Defendant did not object. *Id.* Based on the heavy burden on Defendant under 18 U.S.C § 3143(a), the Court found that detention was required. *Id.*

At the final hearing on October 22, 2013, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 178. At the outset of the hearing, the parties stated that they had arrived at an agreed disposition: if Defendant stipulated to all three violations, the United States would recommend revocation of supervised release, incarceration for six months, and reimposition of supervised release for a term of 24 months. The parties acknowledged that the Court is not bound by the joint recommendation. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for all of the violations, as described in the Report. *Id.*

The Court has evaluated the entire record, including the Supervised Release Violation Report and accompanying documents and Defendant's presentence investigation report. Additionally, the Court has considered all of the 18 U.S.C. § 3553 factors imported into the 18 U.S.C. § 3583(e) analysis. Under 18 U.S.C. § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's conviction pursuant to 18 U.S.C. §§ 2 and 641, is a Class C felony. *See* 18 U.S.C. § 2, 18 U.S.C. § 641, 18 U.S.C. § 3559. For a Class C felony, the maximum revocation sentence provided under 18 U.S.C. § 3583 is two years of imprisonment. *See* 18 U.S.C. § 3583(e)(3). The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438–39 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements

'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted).

Under U.S. Sentencing Guidelines Manual § 7B1.1, Defendant's admitted conduct qualifies as a Grade C violation with respect to each violation. Given Defendant's criminal history category of I (the category at the time of the conviction in this District) and a Grade C violation, *see* U.S. Sentencing Guidelines Manual § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade."), Defendant's range, under the Revocation Table of Chapter 7, is 3–9 months. Both parties agreed to this calculation of the range.

The Court has considered all of the 18 U.S.C. § 3553 factors imported into the 18 U.S.C. § 3583(e) analysis, and finds that imprisonment of six months is appropriate based upon those factors. The Guidelines suggest that the ***primary*** wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* U.S. Sentencing Guidelines Manual 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator.").

The nature and circumstances surrounding Defendant's original offense are not a driving factor in the Court's analysis because the violative conduct is not directly related to the previous criminal behavior.

Defendant's history and characteristics as pertains to this analysis revolve around Defendant's self-described chronic alcoholism. While Defendant has had periods of sobriety each lasting several years, when Defendant does return to drinking, his actions are particularly

dangerous. While driving intoxicated is dangerous in and of itself, Defendant's actions while intoxicated are more dangerous than those the Court typically sees in situations involving such behavior. Defendant has been involved in at least three motor vehicle accidents as a result of his drinking, including the motorcycle accident which forms the basis for the first violation. He suffered serious injuries as the result of the most recent accident. In addition, an incident listed in the presentence investigation report describes Defendant not only driving intoxicated at a high rate of speed, striking a vehicle, and then failing to stop, but also deliberately striking the victims' vehicle again when it followed him. Such behavior is very dangerous and very troubling to the Court.

The need to protect the public and deter criminal conduct by Defendant weighs heavily in the Court's analysis. As noted above, Defendant engages in behavior that is dangerous to both himself and others when he drinks alcohol, particularly driving under the influence. Incarcerating Defendant for six months will protect the public during this period, and will hopefully help Defendant make better choices when he is released and placed back on supervised release. At the final hearing, Defendant requested that, when his new term of supervised release begins, the USPO use alcohol-detecting technology to help Defendant stay sober, which will help protect the public and deter criminal conduct on the part of Defendant. The United States joined the recommendation, and USP Officer Greiwe discussed the available technologies. Because there is real potential to both help Defendant and protect the public, the Court recommends that if public funds are available and the USPO determines in its discretion that the use of alcohol-detection technology is appropriate in Defendant's case, Defendant's use of that technology may be required by the USPO upon reimposition of Defendant's supervised release.

The need to provide education, training, and treatment is present, but not a strong factor. Defendant clearly does need treatment for his alcoholism and any underlying mental health problems. However, Defendant has received a significant amount of substance abuse treatment, ending one program of treatment as recently as May of this year, without apparent success. Defendant has had plenty of opportunity to learn from treatment and has not. The Court is not optimistic that more treatment will yield any appreciable benefit.

The Court has also considered the need to avoid unwarranted disparities. The recommended sentence is within the United States Sentencing Guidelines range, and thus avoids such disparities.

The nature of supervised release includes trust placed in Defendant to adhere to the conditions of his release. Defendant did not repay that trust, and in fact breached it in a dangerous manner. A six-month term of imprisonment upon revocation will give Defendant time to reflect on the trust placed in him, and the Court hopes that after such reflection, Defendant will be able to make better decisions during his new term of supervised release.

A court also may reimpose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). Defendant's convictions under 18 U.S.C. §§ 641 and 2 carried a maximum supervised release term of three years. Under section 3583(h), the maximum at this point is therefore three years "less any term of imprisonment . . . imposed upon revocation of supervised release." 18 U.S.C. § 3583(h). If this Recommended Disposition is adopted by District Judge Van Tatenhove, Defendant will serve six months of incarceration, yielding a post-revocation cap

of 30 months. The Court's recommendation of 24 months is below the cap, and therefore permissible. Defendant was sober and successful on supervised release for over a year and a half, indicating that supervised release has been of benefit to Defendant. The Court finds that reimposition of supervised release is therefore warranted.

Based on the foregoing, the Court **RECOMMENDS** revocation and imprisonment for a term of six months based on the violations found, with a 24-month term of supervised release under the conditions previously imposed to follow, with the additional condition that if public funds are available, the USPO in its discretion may require the use of alcohol-detection technology by Defendant.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

This the 24th day of October, 2013.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge